**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re: ) | |
| ) | |
| BULA DEVELOPMENTS, INC. ) | Case No. 23-24619-C-7 |
| ) | |
| ) | |
| Debtor. ) | |
| ) | Adv. Pro. 2025-02008 |
| NATASHA MORA, CESAR MORA, ) | |
| FAIZAL AWADAN, AND SHAINAZ ) | DCN LRL-2 |
| AWADAN, ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | |
| ) | |
| SBS TRUST DEED NETWORK, BLACK ) | |
| HORSE CAPITAL INC., FINE ) | |
| CAPITAL, DANIEL BENSHIMON, TODD ) | |
| BERNSTEIN AS TRUSTEE OF TB TRUST) | |
| DATED MAY 8, 1997, KAREN ALWEIL,) | |
| AND LOVE GMC HOLDINGS, LLC, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**MEMORANDUM ORDER ON MOTION TO DISMISS COMPLAINT**

The Defendants SBS Trust Deed Network (SBS), Black Horse Capital Inc. and Fine Capital Investments move to dismiss the Complaint filed January 17, 2025, for Injunctive Relief and to Void Transfer filed by Plaintiffs Natasha Mora, Cesar Mora, Faizal Awadan, and Shainaz Awadan.

The bone of contention is the Plaintiffs' attack on the transfer by foreclosure of real property commonly known as 6389 Castejon Drive, La Jolla, California 92307, and the ensuing lockout by order of the San Diego County Superior Court.

The theories of the motion under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) are: lack of standing, lack of subject-matter jurisdiction, and failure to state a claim upon which relief may be granted.

For the reasons stated herein, the Motion to Dismiss is GRANTED, and the adversary proceeding is DISMISSED.

### Procedural History

This adversary proceeding comes with the baggage of earlier decisions, all of which are expressly incorporated here for the benefit of the record for any appellate court that may need to consider the issues presented. Among the decisions and orders of this Court and of the U.S. District Court for the Southern District of California so incorporated are:

> (1) Order Denying Motion For Derivative Standing To Pursue Claims On Behalf Of Estate, Adv. No. 2024-02175-C (8/23/2024) Dkt. 48;
> (2) Memorandum On Transfer Under 28 U.S.C. § 1412 and Rule 1014(b) Of Case Pending In Another District (Amended), No. 23-24619-C-11 (2/06/2025) Dkt. 302 (reported at 666 B.R. 922); and
> (3) Order Denying Ex Parte Application To Rescind Postjudgment Lockout, U.S. District Court, Southern District of California, No. 3:25-cv-00017-RBM-AHG (1/23/2025) (SD Cal. Dkt 292).

The chapter 11 trustee, who is an experienced chapter 11 lawyer, investigated the case, dealt with all interested parties, and sought financing that would be required in order to make the subject property marketable. His report (Bula Dkt 93) related the property had been marketed for two years with no offers. The asking price was $15.8 million (down from $25 million). Interest was accruing at a rate of $110,061 per month. There was an invalid mechanics lien. Necessary site repairs could cost $300,000. Without either a consensual priming lien of at least $300,000 or agreement by secured creditors to a significant carve-out, neither of which appeared reasonably in prospect, sale would result in little or no dividend for unsecured creditors,

1 hence, little likelihood of reorganization.
2     This Court acted on a pending stay relief motion, making a
3 finding of fact that the value of the property was far less than
4 the value now asserted by Plaintiffs and that there was no
5 prospect for an effective reorganization. It vacated the
6 automatic stay, thereby enabling the property to be foreclosed by
7 way of a Trustee's Sale.
8     The chapter 11 trustee later sold the estate's causes of
9 action regarding the construction and engineering defects that
10 rendered the property unsaleable.
11     This Court denied the Plaintiffs' Motion for Derivative
12 Standing to Pursue Claims on Behalf of Estate in their adversary
13 proceeding No. 2024-02175, by an order entered August 23, 2024
14 (8/23/2024) Dkt. 48. The record for that adversary proceeding is
15 hereby incorporated herein. The Order Denying Derivative Standing
16 was not appealed and is now final.
17     The Trustee's Deed Upon Sale was recorded September 13,
18 2024, in the Official Records of the San Diego County Recorder as
19 Doc. # 2024-0246585.
20     Unlawful Detainer proceedings ensued in San Diego County
21 Superior Court as <u>Black Horse Capital Inc. v. Bula Developments
22 Inc.</u>, No. 240UD12825C.
23     Contending they had an enforceable lease, the claims of
24 Plaintiffs Natasha Mora and Cesar Mora to a right of possession
25 were rejected by the Superior Court as invalid by order entered
26 December 16, 2024. The Superior Court ordered the Sheriff to
27 proceed with enforcement of the writ of possession.
28     On December 30, 2024, Plaintiff Natasha Mora filed an

3

emergency writ of mandamus with the California Court of Appeal, Fourth District, which request the Court of Appeal denied the same day.

The next day, December 31, 2024, Natasha Mora filed chapter 13 case, No. 24-04961, in the Southern District of California.

On January 6, 2025, Natasha Mora filed in U.S. District Court, Southern District of California, a Complaint alleging one cause of action under the Fourteenth Amendment Due Process Clause. And, Natasha Mora filed an Ex Parte Application to Rescind Postjudgment Lockout.

On January 17, 2025, Natasha Mora, Cesar Mora; Faizal Awadan; and Shainaz Awadan filed this Adversary Proceeding No. 2025-02008. The Complaint alleges seven counts: (1) Injunction § 105(a); (2) &(3) Set aside Transfer under § 549 (two counts); (4) Void State Court Unlawful Detainer Judgment and related State Court orders; (5) Writ of Assistance restoring Plaintiffs to possession per Federal Rule of Civil Procedure 70(d), as incorporated by Federal Rule of Bankruptcy Procedure 7070; (6) Injunction under § 362(a); (7) Unspecified Additional Relief.

On January 23, 2025, the District Court denied Natasha Mora's Application to Rescind Postjudgment Lockout.

The District Court concluded that federal jurisdiction over the January 23 Complaint was lacking by virtue of the so-called Rooker-Feldman doctrine according to which there is no federal district court jurisdiction over suits "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."

4

Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005); Carmona v. Carmona 603 F.3d 1041 (9th Cir. 2010).

The right to possession issues regarding 6389 Castejon Drive were finally resolved when on December 30, 2024, the California Court of Appeal, Fourth District, denied Natasha Mora's petition for a writ of mandamus. The District Court concluded in decision rendered January 21, 2025, that the filing of the federal Complaint on January 6, 2025, seeking to invalidate the state court's unlawful detainer judgment and post-judgment lockout fit the Rooker-Feldman doctrine and that it lacked jurisdiction and ordered that Natasha Mora show cause by January 31, 2025, why the District Court action should not be dismissed for lack of jurisdiction.

The District Court made three other points applicable to the present analysis of this Motion to Dismiss at the potential for Rule 11 or Rule 9011 sanctions:

> (1) Plaintiff's attempts to obtain possession of the Property have been rejected numerous times by different courts, including the Bankruptcy Court, San Diego Superior Court, and the California Court of Appeal. ... This calls into question whether Plaintiff's counsel conducted "in inquiry reasonable under the circumstances" to confirm their legal contentions were warranted under law;
> (2) The Bankruptcy Court has previously observed Plaintiff's "unclean hands" and found Plaintiff intended to "delay in order to continue living rent-free in the property as long as possible. ... The Court warns Plaintiff that a legally meritless complaint could expose Plaintiff and Plaintiff's counsel to sanctions or referral to the State Bar of California for violation of his Rule 11 obligations; and
> (3) The circumstances surrounding Plaintiff's similar filings before state and federal courts suggests Plaintiff may have filed this action in federal court for an improper purposes. Rule 11(b) makes clear that an intent to cause unnecessary delay is an improper purpose.

Mora v. Black Horse Capital Inc., 2025 WL 255459, Slip op. at 5-6 (S.D. Cal. 2025).

5

1　　　In the chapter 13 case that had been filed on December 31,
2　2024, this Court, on January 24, 2025, invoked Federal Rule of
3　Bankruptcy Procedure 1014(b), issuing an order to show cause why
4　Mora's chapter 13 case should not be transferred to the Eastern
5　District of California and ordered the parties not to proceed
6　until the question is decided.
7　　　On February 6, 2025, this court, in a published decision,
8　ordered, pursuant to 28 U.S.C. § 1412 and Rule 1014(b), that the
9　Natasha Mora chapter 13 case be transferred to the Eastern
10　District of California. In re Bula Developments Inc., 666 B.R.
11　922 (Bankr. E.D. Cal. 2025).
12　　　The Natasha Mora chapter 13 case was designated as No. 2025-
13　20575-C-13 upon receipt of the file transferred from the Southern
14　District of California.
15　　　Mora did not comply with any of her responsibilities under
16　chapter 13: (1) failed to file a chapter 13 plan; (2) failed to
17　provide to the Chapter 13 Trustee payment advices, tax returns,
18　valid identification, proof of social security number; (3) failed
19　to file Schedules, Statement of Financial Affairs, Statement of
20　Current Monthly Income, Calculation Disposable Income; and (4)
21　failed to appear at the Meeting of Creditors.
22　　　The Natasha Mora chapter 13 case was dismissed for cause on
23　April 16, 2025, on the motion of the Chapter 13 Trustee. Case No.
24　25-20575, Dkt 46.
25
26　　　　　　　　　　　　　　　　I
27　　　　　　　　　　　　Lack of Standing
28　　　In this chapter 11 case of Bula Developments Inc., Case No.

6

1  23-24619, chapter 11 trustee Walter Dahl is the person with the
2  exclusive right to sue on behalf of the corporate estate. E.g.,
3  Estate of Spirtos v. Superior Court, 433 F.3d 1172, 1176 (9th
4  Cir. 2006).
5       The Plaintiffs, who are the four shareholders of Bula
6  Developments Inc. and acting as debtor-in-possession were
7  terminated from debtor-in-possession status upon the appointment
8  of chapter 11 trustee Walter Dahl pursuant to 11 U.S.C.
9  § 1104(a)(2) after serious questions about the viability of the
10 case as a chapter 11 reorganization arose.
11      This Court denied the Plaintiffs' Motion for Derivative
12 Standing to Pursue Claims on Behalf of Estate in their adversary
13 proceeding No. 2024-02175, by an order entered August 23, 2024
14 (8/23/2024) Dkt. 48. The record for that adversary proceeding is
15 hereby incorporated herein. The Order Denying Derivative Standing
16 was not appealed and is now final.
17      This Court continues to adhere to its view expressed in its
18 prior Order Denying Motion For Derivative Standing that: "This
19 Court is persuaded that the hidden agenda for this Motion for
20 Derivative Standing is delay in order to continue living rent-
21 free in the property for as long as possible. That hidden agenda
22 follows from the history of this case. The four individual
23 owners' hands are sufficiently unclean that the Motion is
24 DENIED."
25      It follows that the Plaintiffs have no standing to act on
26 behalf of causes of action owned by the estate.
27      Having no standing to act on behalf of the estate, the
28 Plaintiffs' Complaint must be dismissed.

7

## II

The Plaintiffs ask this Court to enter miscellaneous orders that operate from the premise that the foreclosure of 6389 Castejon Drive was invalid under California Civil Code § 2924m.

There are motions for: temporary restraining orders and preliminary injunctions (NM-1 Dkt 10) & (NM-2 Dkt 20); Motion to Strike (NM-3 Dkts 52-56); Motion for Judicial Notice (NM-4 Dkt 59); Response to Motion for Sanctions (NM-5 Dkt 65); Motion to Amend (NM-6 Dkts 116-117).

### A

The requests for temporary restraining orders and preliminary injunctions all suffer the same fatal defect: there is not sufficient likelihood of success on the merits to warrant granting such requests.

The purpose of a restraining order is to preserve the status quo and to prevent irreparable harm "just so long as is necessary to hold a hearing, and no longer." Granny Goose Foods, Inc. v. Bhd. of Teamsters, 415 U.S. 423, 439 (1974). The standard for a temporary restraining order is "substantially identical" to the standard for a preliminary injunction. Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain either form of injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the

public interest. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). "The first factor under Winter is the most important," to the extent the court need not consider the remaining three elements where a plaintiff fails to "show the likelihood of success on the merits." Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (citations omitted). Courts within the Ninth Circuit may also consider a request for a temporary restraining order using a "sliding scale" approach in which "a stronger showing of one element may offset a weaker showing of another." All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131–35 (9th Cir. 2011). "[W]hen plaintiffs establish that the balance of hardships tips sharply in their favor, there is a likelihood of irreparable injury, and the injunction is in the public interest, they need only show 'serious questions' on the merits." Where Do We Go Berkeley v. Cal. Dep't of Transp., 32 F.4th 852, 859 (9th Cir. 2022).

Here, the fatal flaw is there has been no showing of likelihood of success on the merits. Even if the "sliding scale" approach were to be applied, there has been no credible showing regarding irreparable harm, balance of hardships, or that an injunction would be in the public interest.

Accordingly, the requests for temporary restraining orders and preliminary injunctions must be DENIED.

B

The District Court's Rooker-Feldman no-jurisdiction analysis in Mora v. Black Horse Capital was applicable because the simplicity of the Complaint led to a straightforward conclusion

9

1 that the action was in the nature of an appeal from the unlawful
2 detainer decisions of the California courts.
3     But, the Rooker-Feldman no-jurisdiction doctrine is narrowly
4 circumscribed to situations in which no independent legal theory
5 is asserted. That is not the case with the instant Complaint.
6     The instant Complaint asserts independent legal theories
7 that a court needs to consider notwithstanding that the overall
8 situation continues to qualify as a collateral attack on the
9 state-court unlawful detainer judgments.
10    Where there are independent legal assertions, the federal
11 trial court is not deprived of jurisdiction and may proceed to
12 consider the matters, if only to reject the relief claimed. Noel
13 v. Hall, 341 F.3d 1148 (9th Cir. 2003), cited with approval,
14 Saudi Basic Indus., 544 U.S. at 293.
15    In such circumstances, the state-court judgments are honored
16 in federal courts pursuant to the Full Faith and Credit Statute
17 (28 U.S.C. § 1738) because the federal courts must give such
18 judgments the same preclusive consequences based on the same
19 award. Saudi Basic Indus., 544 at 293; McDonald v. City of W.
20 Branch, 466 U.S. 284, 287 (1985); Harmon v. Kobrin (In re
21 Harmon), 250 F.3d 1240, 1245 (9th Cir. 2001); Khaligh v. Hadaegh
22 (In re Khaligh), 338 B.R. 817, 824 (9th Cir. BAP 2006).
23    As a matter of full faith and credit, this Court must focus
24 on California preclusion law.
25    The basic features of California issue preclusion law were
26 restated by the California Supreme Court in Lucido v. Superior
27 Ct., 51 Cal.3d 335, 341-43 (1990).
28    Under Lucido, six basic elements must be satisfied, five of

which are described as "threshold" requirements: (1) identical issue; (2) actually litigated in the former proceeding; (3) necessarily decided in the former proceeding; (4) former decision final and on the merits; and (5) party against whom preclusion sought either the same, or in privity with, party in former proceeding.

The sixth Lucido element is a mandatory "additional" inquiry into whether imposition of issue preclusion in the particular setting would be fair and consistent with sound public policy. The California Supreme Court explained: "public policies underlying collateral estoppel – preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation – strongly influence whether its application in a particular circumstance would be fair to the parties and constitutes sound judicial policy." Lucido, 51 Cal.3d at 341-43.

The issue litigated in the California courts to final judgment was the unlawful detainer issue, of which an essential element was the validity of the foreclosure by trustee's sale.

Mora and her co-plaintiffs litigated and lost in a proceeding in which the issue of their entitlement to the property and validity of a lockout was necessarily decided and essential to the proceeding, the state-court decisions are final and on the merits, and the Plaintiffs are in privity with each other.

Two relevant public policies strongly favor application of preclusion against Mora and her co-Plaintiffs. First, terminating repetitive litigation that occurs as Mora develops new theories

11

promotes judicial economy. Second, imposing preclusion to terminate the seemingly-endless string of litigations protects the other litigants in the case from harassment by vexatious litigation.

In short, it is now too late for Mora to contend that the trustee's sale, unlawful detainer proceedings, and ensuing lockout were invalid. Principles of claim preclusion required that all theories challenging the proceedings be raised at the same time in a single proceeding.

## III
### California Civil Code 2924m

If preclusion did not apply, then the Plaintiffs' primary substantive contention that the subject foreclosure did not comply with the provisions of California Civil Code § 2924m lacks merit.

There are multiple problems with their contention in addition to the Plaintiffs' lack of standing to assert claims on behalf of the estate.

First, the foreclosure occurred after this Court had vacated the automatic stay.

Second, a post-petition transfer of property of the estate that is authorized by the court, by definition, cannot qualify as § 549 avoidable post-petition transfer. 11 U.S.C. § 549(a)(2)(B).

Third, the final determinations in the unlawful detainer proceedings in the San Diego County Superior Court and by the California Court of Appeal operate as preclusive regarding all issues regarding the foreclosure.

12

1    Fourth, California Civil Code § 2924m, which statute affords
2 "eligible tenant buyers" what amounts to a right of first refusal
3 in instances of foreclosure on single family residences in
4 California, does not apply to the Plaintiffs.
5    The Plaintiffs contend in this action that they (Natasha
6 Mora and Cesar Mora) are lessees from Bula Investments Inc. of
7 6389 Castejon Drive and were entitled to force compliance with
8 the procedures set forth in Civil Code § 2924m.
9    This Court has previously parsed California Civil Code
10 § 2924m, which analysis is incorporated herein. <u>Spikes v. Quality
11 Loan Service Corp. (In re Spikes)</u>, 662 B.R. 704 (Bankr. E.D. Cal.
12 2024).
13    The Defendants contend in their Motion to Dismiss that the
14 Plaintiffs' Notice of Intent to Bid transmitted to them by their
15 attorney Marc Steven Applebaum as Exhibit 2 of the Complaint was
16 false and fraudulent in that it omitted the "evidence of the
17 existence of the tenancy" required by California Civil Code
18 § 2924m(a)(2), (a)(4), and (c)(2). The Defendants argue this
19 omission evidences bad faith and concedes the Plaintiffs' claim
20 lacks evidentiary support.
21    The Plaintiffs counter in their motion NM-6 that the
22 omission of four pages evidencing the lease was a mere "clerical
23 error" and move to amend the complaint (DCN NM-6), which motion
24 is GRANTED so as to insure that the complete lease is in the
25 record.
26    The factual issue about the evidence of tenancy, however, is
27 irrelevant. While the District Court's assessment of Marc Steven
28 Applebaum's performance in No. 3:25-cv-00017-RBM-AHG (1/23/2025)

13

(S.D. Cal. Dkt 292) does not inspire confidence in his competence and ability to comply with technical aspects of a statute and his transmission to Defendants of the complete lease, the Defendants' "correction" by providing a copy of the lease slits their own throats.

The Moras strike out on three key prerequisites in Civil Code 2924m.

In order to be an "eligible tenant buyer" for purposes of Civil Code § 2924m, the lease must be based on an "arm's length" transaction. Cal. Civ. Code § 2924m(a)(2)(B).

The lease provided by the Plaintiffs is a lease from Bula Investments Inc., of which all of the plaintiffs (including Natasha Mora and Cesar Mora) are the sole shareholders as lessor with Natasha Mora and Cesar Mora as lessees. Exhibits with Lease. Dkt 117. The Moras' signatures are on both sides of the lease – as lessors and as lessees. By any definition, that is NOT an arm's length transaction.

In short, the Moras are not "eligible tenant buyers" under Civil Code 2924m(a)(2)(B) because their transaction with themselves at a time that they were in control of Bula Investments Inc. was not "at arm's length." Rather, the lease is a sham designed to create the mis-impression they are bona fide lessees. Strike One.

Nor are the Moras "prospective owner-occupants" because they are "persons with an ownership interest in the mortgagor, unless the mortgagor is a publicly traded company." Cal. Civ. Code § 2924m(a)(1)(C)(v). The Moras each own 25 percent of the shares of Bula Investments Inc., the mortgagor. Hence, as owners of 50

1 percent of the mortgagor, that are disqualified from status as
2 "prospective owner-occupants." Strike Two.
3      Moreover, the Moras flunk the statutory test for "eligible
4 bidder" because they are neither "eligible tenant buyers," nor
5 "prospective owner-occupants." Cal. Civ. Code §2924m(a)(3)(A)-
6 (B). Strike Three.
7      Since the foreclosure was not impeded by the prospect of
8 "eligible tenant buyers" who would be "prospective owner-
9 occupants" and who were not "eligible bidders" within the meaning
10 of Civil Code § 2924m there is no defect in the foreclosure on
11 that account. Thus, even if the discretionary doctrine of claim
12 preclusion does not block the Plaintiffs, their own facts
13 establish the frivolous nature of their contentions.

## Conclusion

16      The Plaintiffs lack standing to assert seven causes of
17 action for which the chapter 11 trustee has exclusive standing.
18      There is no defect in the foreclosure on account of the
19 California Civil Code § 2924m provisions making accommodations
20 for "eligible tenant buyers" because the Plaintiffs do not
21 qualify as "eligible tenant buyers" and do not qualify as
22 "eligible bidders."
23      The validity of foreclosure has been rendered res judicata,
24 i.e. claim and issue preclusive, by virtue of final orders of
25 California courts of competent jurisdiction.
26      The Complaint in this adversary proceeding No. 2025-02008 is
27 DISMISSED.

Dated: May 01, 2025

_____
United States Bankruptcy Judge

15